**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
BARBARA FRIEL,

                    Plaintiff,

           -against-

COUNTY OF NASSAU and NASSAU
COUNTY POLICE DEPARTMENT,

                  Defendants.
---------------------------------------------------------X

                      **MEMORANDUM OF**
                      **DECISION AND ORDER**
                      12-CV-4297 (ADS) (ETB)

**APPEARANCES:**

**Rossi & Crowley, LLP**
*Attorneys for the Plaintiff*
42-24 Douglaston Parkway
Douglaston, NY 11363
    By: Thomas J. Rossi, Esq., Of Counsel

**Nassau County Attorney's Office**
*Attorneys for the Defendants*
One West Street
Mineola, NY 11501
    By: Michelle M. Faraci. Deputy County Attorney, Of Counsel

**SPATT, District Judge.**

       On August 27, 2012, the Plaintiff Barbara Friel (the "Plaintiff") commenced this action

against the Defendants County of Nassau (the "County") and Nassau County Police Department

(the "Police Department," and collectively, the "Defendants") pursuant to Title VII of the Civil

Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the United States

Constitution, the New York State Human Rights Law (the "NYSHRL") and the New York State

Constitution. The Plaintiff asserts seven causes of action. In this regard, she alleges that the

Defendants (1) violated her Fourteenth Amendment rights to equal protection by discriminating

and retaliating against her based on gender; (2) violated her rights under Title VII by subjecting

her to disparate treatment and discriminating against her because of her gender; (3) violated her

rights under NYSHRL by subjecting her to disparate treatment and discriminating against her

because of her gender; (4) violated her rights under Title VII by retaliating against her for

opposing discrimination; (5) violated her rights under NYSHRL by retaliating against her for

opposing discrimination; (6) violated her rights under the First Amendment to the United States

Constitution by retaliating against her for exercising her free speech rights to oppose

discrimination; and (7) depriving her of the protection provided by the terms of the collective

bargaining agreement (CBA) that was entered into by the County and the Plaintiff's union.

Presently before the Court is the Defendants' motion to dismiss the Plaintiff's Complaint

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) on the grounds that it

fails to state a valid cause of action. For the reasons set forth below, the Court denies in part and

grants in part the Defendants' motion.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Plaintiff's Complaint and

construed in a light most favorable to the Plaintiff.

## A. Factual Background

The Plaintiff is a female police officer. On July 18, 1986, the Plaintiff was hired by the

Defendants. At all times relevant to this action, the Defendant held the position of detective with

the Police Department. As part of her job as a detective, the Plaintiff was responsible for

"conduct[ing] extraditions and in-state prisoner transfers, which are effectuated when detectives

from the receiving jurisdiction travel to the surrendering jurisdiction, take custody of the

[detainee] and accompany the [detainee] back to the receiving jurisdiction." (Compl., ¶ 20.)

Extraditions and in-state prisoner transfers were carried out by two detectives. Before March 1, 2007, one of these two detectives was typically the detective who had worked directly on the case, referred to as the "investigating detective." Also before March 1, 2007, the Defendants' policy required that only one of these two detectives be the same gender as the detainee.

However, on March 1, 2007, the Defendants changed their policy. At this time, the Defendants began to require that both of the detectives be of the same gender as the detainees being transported outside of Nassau County and adjoining counties. Thereafter, first on May 21, 2008 and then on October 29, 2009, the policy was further modified to extend the distance of the perimeter outside of which both escorts must be of the same gender as the detainee.

According to the Plaintiff, "[a]s a direct result of the [March 1, 2007] policy change, the number of extraditions and transfers that could be assigned to a female detective was drastically reduced," since "the vast majority of [detainees] are of the male sex." (Compl., ¶ 23.) The Plaintiff also claims that the Defendants did not follow the new extradition policy in at least 25 instances in 2008, in that they assigned male detectives to extradite female detainees outside the designated perimeter.

On March 25, 2008, the Plaintiff wrote a letter to the Chief of Detectives for a re-evaluation of the extradition policy. Almost nine months later, on December 11, 2008, the Plaintiff was called into Captain Thompson's office and notified that an audit was done of her computer usage. The Complaint does not provide details as to Captain Thompson's full name or his job responsibilities. According to the Plaintiff, she had never previously been audited for computer usage. Captain Thompson advised the Plaintiff that her research into bail jumping

cases was inappropriate. However, the Plaintiff asserts that this research was necessary for the fulfillment of her job duties, as bail jumping often results in extraditions of the jumper.

In the Complaint, the Plaintiff alleges that her "work performance has always been highly acceptable and satisfactory" during her employment at the Police Department. (Compl., ¶ 31.) Thus, the Plaintiff alleges that the audit of her computer usage was a direct consequence of her March 25, 2008 letter. The Plaintiff further alleges that, as a direct consequence of the March 25, 2008 letter, she was denied extradition requests though she was often the investigating detective on the case and/or the detainee was female.

According to the Plaintiff, the above actions by the Defendants caused her harm, which includes (1) deprivation of income in the form of wages, pension value, promotional opportunities and job assignments; (2) physical harm in the form of nervousness, anxiety, humiliation, harm to reputation and good name and depression; (3) loss of pay and loss of benefits; (4) denial of equitable employment compensation, equitable employment terms and conditions and privileges of employment; (5) the incurring of legal fees and expenses; and (6) deprivation of her liberty and rights under the laws of the United States and the state of New York.

**B. Procedural History**

On July 22, 2008, the Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("the EEOC"). The EEOC charge indicated that it was filed under Title VII on the basis of gender discrimination. (Faraci Decl., Exh. B.) The Plaintiff did not check the box indicating that the discrimination was also based on retaliation. In the EEOC charge, the Plaintiff described the particulars of the discrimination as follows:

I was hired by the [ ] Police Department on July 18, 1986, and currently hold the position of Detective. On or about March 1,

2007, the extradition policy was changed to prohibit an
investigating detective from taking into custody, transporting and
processing a subject from another state if the subject [was] a
different sex than the investigating detective.  Extraditions [within]
New York State have been restricted to certain adjoining counties.
Prior to March 1, 2007, only one detective needed to be the same
sex as the prisoner during extradition.

     As most defendants requiring extradition are male, this
policy adversely impacts the amount of work female detectives are
assigned.  On numerous occasions, myself and other female
detectives were not considered for extraditions/warrant arrest.  The
male detectives who responded were awarded overtime pay and
used travel days as contractual pay back days.

     I have contacted my Union and they have not provided any
assistance.

     I believe I have been discriminated against because of my
sex, female, in violation of Title VII[.]

(Farcai Decl., Exh. B.)

On January 20, 2011 the EEOC issued a finding of probable cause of discrimination.  On

that same date, the EEOC invited all the parties to the charge in an attempt to conciliate the

matter amicably.  However, thereafter, on November 9, 2011, the EEOC issued a Notice of

Conciliation Failure and forwarded the case to the United States Department of Justice ("the

DOJ") for review and possible litigation.  On May 20, 2012, the DOJ issued to the Plaintiff a

Notice of Right to Sue letter relative to her charge.  About three months later, on August 27,

2012, the Plaintiff commenced this action.

## II.     DISCUSSION

### A.  Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6)

only if it does not contain enough allegations of fact to state a claim for relief that is "plausible

on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.

2d 929 (2007).  Indeed, the issue on a motion to dismiss is "not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

In deciding a motion to dismiss, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. Iqbal, 556 U.S. at 678; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, No. 11-3284-cv, 2012 U.S. App. LEXIS 18394, at *5–6 (2d Cir. Aug. 30, 2012).

However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris, 572 F.3d at 72 (quoting Iqbal, 556 U.S. at 678). Only if this Court is satisfied that "the

complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

## B.  As to Whether the Plaintiff Satisfied All Procedural Requirements Before Bringing Her Title VII Retaliation Claim and her NYSHRL Claims

As an initial matter, the Defendants allege that the Plaintiff is barred from bringing (1) her fourth cause of action, alleging retaliation pursuant to Title VII, because she never included a retaliation theory in her July 22, 2008 EEOC charge; and (2) her third and fifth causes of action, brought pursuant to the NYSHRL, because she never filed a notice of claim, as required by New York General Municipal Law ("N.Y. Gen. Mun. Law") §§ 50-e and 50-i and New York County Law § 52.  The Court first addresses the Defendants' argument that the Plaintiff's failure to include her retaliation claim in her EEOC charge prevents her from now asserting it in the present action, before turning to whether the Plaintiff's NYSHRL claims are procedurally barred due to the Plaintiff's failure to file a notice of claim.

### 1.  The Plaintiff's Title VII Retaliation Claim

Before filing a Title VII claim in federal court, a plaintiff must first exhaust all administrative remedies.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to [a] suit" under Title VII) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)).  Pursuant to Title VII, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of any alleged unlawful employment practice or 300 days where a State or local agency has authority to grant or seek relief from such a practice.  42 U.S.C. § 2000e–5(e)(1).  In this case, because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days after the alleged

occurrence of an unlawful employment practice.  Id.; Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999).  Failure to timely file a charge with the EEOC renders the subject claim time-barred, thereby preventing a claimant from bringing her claim in federal court.  Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133–34 (2d Cir. 2003).

Here, the Plaintiff's July 22, 2008 EEOC charge included her discrimination claim but not her retaliation claim.  "An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge."  Hoffman v. Williamsville School Dist., 443 F. App'x 647, 649 (2d Cir. 2011) (citing Williams v. New York City Housing Authority. 458 F.3d 67, 70 (2d Cir. 2006)); see also Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) (superseded on other grounds). The Second Circuit has provided the following guidance with respect to determining whether a claim not asserted in an EEOC charge is reasonably related to a claim that is raised in the charge:

> [A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.  In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.  The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases.

Williams, 458 F.3d at 70 (citations and internal alterations and quotation marks omitted). Further, the Second Circuit has determined three situations in which a claim may be found to be reasonably related:

> 1) where "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; 2) where the complaint is "one alleging retaliation by an employer against an employee for filing an EEOC charge"; and 3) where the

> complaint "alleges further incidents of discrimination carried out in
> precisely the same manner alleged in the EEOC charge."

Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (quoting Butts, 90 F.2d at 1402–03).

The Court finds that the Plaintiff's retaliation claim is not reasonably related to the alleged discriminatory conduct described in her EEOC charge. Indeed, the EEOC charge makes no mention of the Plaintiff's March 25, 2008 letter. Moreover, the EEOC charge was filed on July 22, 2008, months before the Plaintiff learned, on December 11, 2008, that her computer usage had been audited. As such, "[t[he [EEOC] [c]harge did not include a claim of retaliation nor did it contain allegations that [the Plaintiff] had engaged in the sort of 'protected participation or opposition' necessary to trigger a Title VII retaliation claim." Hoffman, 443 F. App'x at 650 (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209–09 (2d Cir. 1990)).

"Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive." Flemming v. Verizon N.Y., Inc., 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005); see also Gambrell v. Nat'l R.R. Passenger Corp., No. 01-CV-6433, 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003); Chinn V. City of New York School of Law at Queens College, 963 F. Supp. 218, 223–24 (E.D.N.Y. 1997). Thus, as "nothing in the [EEOC] Charge provided the EEOC adequate notice to investigate possible retaliation," the Court finds "that the claim of retaliation is not reasonably related to the allegations in the [EEOC] Charge." Hoffman, 443 F. App'x at 650.

The Plaintiff attempts to save her Title VII retaliation claim by suggesting that it involves incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. In this regard, the Plaintiff points out that part of the alleged retaliation she was subjected to as a result of her March 25, 2008 letter was the denial of extradition requests. However, the Plaintiff apparently mischaracterizes her retaliation claim as a "further incident of discrimination."

Indeed, the Plaintiff's allegations of retaliation, which center around the March 25, 2008 letter, "[is] distinct and separate from [the allegation of discrimination] contained in the EEOC charge," which involved the revision of the extradition policy. Moguel v. Covenant House/New York, No. 03 Civ. 3018 RWS, 2004 WL 2181084, at *7 n. 2 (S.D.N.Y. Sept. 29, 2004). As such, the Plaintiff's retaliation claim cannot be said to be "a further incident of retaliation carried out in precisely the same manner alleged in the EEOC [charge]," because there was no retaliation claim included in the EEOC charge. Gamrell, 2003 WL at *10. Accordingly, the Plaintiff's theory is unavailing and the Court dismisses her Title VII retaliation claim as not properly exhausted. Id.

### 2. The Plaintiff's NYSHRL Claims

The Defendants also argue that the Plaintiff's NYSHRL claims are barred because she never filed a notice of claim. N.Y. Gen. Mun. Law §§ 50-e and 50-i requires that, prior to bringing a tort action, a plaintiff serve a notice of claim within 90 days after the claim arises. Of importance, New York County Law § 52 extends this notice of claim requirement to any claim for damages against a "county, its officers, agents, servants or employees."

"It is well settled that compliance with the notice of claim requirement is a condition precedent to commencement of an action against [a] municipality and the burden is on the plaintiff to plead and prove compliance with the notice of claim requirement." Russell v. County of Nassau, 696 F. Supp. 2d 213, 245 (E.D.N.Y. 2010) (citing P.J. Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No. 6, 29 N.Y.2d 508, 323 N.Y.S.2d 978, 272 N.E.2d 488 (1971)). As such, "[f]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." Dingle v. City of New York, 728 F. Supp. 2d 332, 348–49 (S.D.N.Y. 2010).

"There is disagreement, however, among the New York courts as to whether the notice of claim requirement set forth in [N.Y. Gen. Mun. Law] § 50–e applies to causes of action brought for employment discrimination pursuant to [the NYSHRL]." Cody v. County of Nassau, 577 F. Supp. 2d 623, 647 (E.D.N.Y. 2008). Nevertheless, when the action involves a county, "[r]ecent cases within the Eastern District of New York [ ] have repeatedly held that not only are notice requirements of [N.Y. Gen. Mun. Law §] 50-e applicable to claims brought pursuant to [NYSHRL], but the broader notice requirements of New York County Law § 52 are applicable as well." Id. (collecting cases); see also Olsen v. County of Nassau, No. CV 05-3623(ETB), 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008). Accordingly, since the Plaintiff brings this action against the County of Nassau and its Police Department, the notice of claim requirements apply to her NYSHRL claims pursuant to N.Y. Gen. Mun. Law §§ 50-e and 50-I and New York County Law § 52. See Anderson v. Nassau County Dept. of Corrections, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008).

In opposition to the Defendants' motion, pointing to her July 22, 2008 EEOC charge, the Plaintiff contends that she "can satisfy all of the elements needed to show her substantial compliance with the notice of claim requirement." (Pl. Opp., pg. 9.) "However, similar arguments have been expressly rejected by other courts that have considered this issue." Olsen, 2008 WL at *2; see also Cody, 577 F. Supp. 2d at 649 (same); Patterson v. City of New York, No. 97 Civ. 7159, 200 WL 547020, at *3 (S.D.N.Y. May 4, 2000) ("Courts have rejected the proposition that an EEOC complaint may be construed as a notice of claim.") (citing Baker v. Monroe, 47 F. Supp. 2d 371, 374 (W.D.N.Y. 1999) (in turn citing McNeil v. Aguilos, 831 F. Supp. 1079, 1085 (S.D.N.Y. 1993))). As the court in Wrenn v. New York City Health Hospitals Corporation, 104 F.R.D. 533 (S.D.N.Y. 1985) explained, "[§] 50-e contains specific provisions

as to the form of the notice and manner of service" and thus, an "EEOC 'charge' . . . does not satisfy the statutory requirements for" filing a notice of claim. Id. at 557.

Moreover, even assuming the July 22, 2008 EEOC charge could substitute for a notice of claim, it would be defective. In this regard, the EEOC charge was untimely with respect to the Plaintiff's discrimination claims, as it was filed a year and four months after the March 1, 2007 extradition policy change. See, e.g., Santiago v. Newburgh Enlarged City School Dist., 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006) ("Even if an EEOC charge could be considered a substitute for a notice of claim – and courts have repeatedly declared that it cannot – this notice of claim would not suffice because it was served . . . over eight months after plaintiff was fired.")

Furthermore, as discussed above, the EEOC Charge did not include any retaliation claims, as it was filed before the Plaintiff was notified, on December 11, 2008, that her computer usage had been audited. Consequently, the EEOC Charge is insufficient to serve as a notice of claim for the Plaintiff's retaliation claim. See, e.g., Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 399 (S.D.N.Y. 2009) ("The defect in the original notice of claim . . . is that it was premature in asserting the malicious-prosecution claim" because "[d]ismissal of the charges is a required element of such a claim . . . and that event had concededly not occurred at the time of the filing of the notice of claim in November 2006. Since the statute requires that a notice of claim be filed within ninety days after the accrual of the claim . . . the original filing was itself not effective to satisfy the administrative-exhaustion requirement."). As such, since the Plaintiff did not file a valid notice of claim within the statutorily required 90 days, the Court dismisses the Plaintiff's third and fifth causes of action, brought pursuant to the NYSHRL.

**C.  As to Whether the Plaintiff's 42 U.S.C. § 1983 Claim, Alleging that the Defendants Violated her Fourteenth Amendment Rights to Equal Protection, Satisfies the Requirements of Monell**

In this case, the Plaintiff brings her first cause of action pursuant to 42 U.S.C. § 1983 and alleges that the Defendants violated her Fourteenth Amendment rights to equal protection by discriminating and retaliating against her based on gender.  However, the Defendants argue that this claim must be dismissed because the Plaintiff has not met the requirements of Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Section 1983 permits an action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  The Second Circuit has held that "§ 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including . . . disparate treatment, on the basis of gender."  Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006).

Under the Supreme Court's holding in Monell, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom."  Id. at 694; see also Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (finding that in order to impose liability on a government entity under Section 1983, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom . . . ' and (2) 'a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.'") (quoting Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).  "The policy or custom need not be memorialized

in a specific rule or regulation." <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (citing

<u>Sorlucco v. N.Y.C. Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992)).  Instead, such municipal

policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking

officials, and practices so persistent and widespread as to practically have the force of law."

<u>Connick v. Thompson</u>, __ U.S. __, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation

omitted).  "Finally, where a practice or law neutral on its face is alleged to have a disparate

impact upon a protected class, the plaintiff nevertheless must show that practice or law has a

discriminatory purpose to maintain an action under the Equal Protection Clause." <u>Prompt

Courier Service, Inc. v. Koch</u>, No. 89 CIV. 3053 (RWS), 1990 WL 100904, at *4 (S.D.N.Y. July

13, 1990).

      Here, in her Complaint, the Plaintiff asserts that on March 1, 2007, the Defendants

changed their extradition policy to require that both detectives be the same gender as the detainee

being transported.  She also asserts that the Defendants further modified this policy on May 21,

2008 and October 29, 2009 to extend the distance of the perimeter outside of which both of the

detectives had to be of the same gender as the detainee.  The Plaintiff explains that this policy

resulted in gender discrimination because most detainees were of the male gender, and thus, the

number of extraditions and transfers that could be assigned to a female detective was

significantly reduced.  Moreover, of importance, the Plaintiff alleges that the Defendants did not

follow their own policy when the extradition involved a female detainee.  In this regard, for

example, in 2008, on at least 25 occasions, the Defendants assigned male detectives to extradite

female detainees outside the designated perimeter.  As a consequence of the Defendants' policy

and practices, the Plaintiff claims that she and other female detectives were restricted in

assignments, transfers and overtime work.

The Defendants contend in their initial memorandum of law that "[a]side from citing one example, the [Police] Department's extradition policy, [the] Plaintiff fails to set forth any factual support for her allegation that the [Police] Department had a custom or policy of discrimination against women with respect to the 'conditions, terms, pay, assignments, promotions, benefits, evaluations, expectations, and discipline.'" (Def. Mem., pg. 6, quoting Compl., ¶ 34.)  However, the Court finds that the Plaintiff has clearly identified the extradition policy as a custom or policy that favors male detectives over female detectives and which results in female detectives being denied extradition assignments, transfer assignments and potential overtime pay on the basis of gender.  As such, the Court finds that these assertions state a valid claim, pursuant to § 1983, that the Defendants violated the Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by discriminating based on gender.  See, e.g., Jenn-Ching Luo v. Baldwin Union Free School Dist., No. 12-CV-3073(JS)(AKT), 2013 WL 1182232, at *7 (E.D.N.Y. Mar. 21, 2013); Volpe v. Nassau County, No. 12-cv-2416 (JFB(AKT), 2013 WL 28561, at *2 (E.D.N.Y. Jan. 3, 2013).

With respect to the portion of Plaintiff's § 1983 claim premised on Fourteenth Amendment retaliation, the Defendant similarly argues that "[n]owhere in [the] Plaintiff's [C]omplaint does she set forth any facts in support of the existence of a municipal custom or policy of retaliation 'against female employee who complain of discrimination.'" (Def. Mem., pg. 6, quoting Compl., ¶ 35.)  In this regard, the Plaintiff's Complaint states that as a result of her March 25, 2008 letter complaining of gender discrimination, her computer usage was audited and she was denied extradition requests.  The Plaintiff also alleges that on July 22, 2008, prior to learning that her computer usage had been audited, she filed an EEOC charge.  The Court finds

that on a motion to dismiss, this is sufficient to support the Plaintiff's claim that the Defendants had a custom or policy of retaliation, in accordance with <u>Monell</u>.

Of importance, "[a]t this early stage in the litigation, [the] [P]laintiff need not prove that she would succeed on her claim of <u>Monell</u> liability, but must merely show that she has a plausible claim that would entitle her to relief." <u>Drees v. County of Suffolk</u>, No. 06-CV-3298 (JFB)(ETB), 2007 WL 1875623, at *19 (E.D.N.Y. June 27, 2007). In the Court's view, the Plaintiff has successfully done so here. For example, the Plaintiff's assertions indicate that she faced adverse employment actions only after she opposed the extradition policy and, thus, this suggests that the Chief of Detectives or another official with final policy-making authority may have directed the audit and/or that the Plaintiff be denied extradition assignments in retaliation for her activity. "While the Complaint does not explicitly state that [the Chief of Detectives or Captain Thompson] had final policy-making authority over [the auditing of computer usage or the denial of extradition requests], the Court can appropriately draw that reasonable inference at this stage." <u>Giscombe v. New York City Dept. of Educ.</u>, No. 12 Civ. 464(LTS)(KNF), 2013 WL 829127, at *7 (S.D.N.Y. Feb. 28, 2013). Therefore, the Court also denies the Defendants' motion to dismiss the portion of the Plaintiff's § 1983 claim based on a theory of Fourteenth Amendment retaliation.

In sum, the Court finds that the Plaintiff is not barred under <u>Monell</u> from asserting her § 1983 claim based on either a theory of gender discrimination or Fourteenth Amendment retaliation.

**D.  As to Whether the Plaintiff Stated Claims under 42 U.S.C. § 1983 and Title VII on the Grounds that the Defendants Subjected Her to Disparate Treatment and Discriminated Against Her Because of Gender**

Having found that the Plaintiff satisfied the requirements of <u>Monell</u> with respect to its § 1983 claim premised on a theory of gender discrimination, this Court now turns to whether the Plaintiff's § 1983 and Title VII claims based on a theory of gender discrimination may withstand the Defendants' Rule 12(b)(6) motion to dismiss.  Of importance, generally "discrimination claims under Title VII [and] 42 U.S.C. §§ 1981 and 1983 . . .  are analyzed together, as the same analytic framework applies to each[.]"  <u>Davis v. Oyster Bay–East</u>, No. 03–CV–1372(SJF)(JO), 2006 WL 657038, at *8, n. 12 (E.D.N.Y. Mar. 9, 2006), <u>aff'd</u>, 220 F. App'x 59 (2d Cir.2007); <u>see</u> <u>also</u> <u>Walker v. New York City Dep't of Corrections</u>, No. 01 Civ. 1116(LMM), 2008 WL 4974425, at *12 (S.D.N.Y. Nov. 19, 2008) ("This court considers the Title VII . . .and § 1983 discrimination claims together, as the Second Circuit applies the same analysis to these claims.") (collecting cases).

As an initial matter, the Defendants apparently misapply the Supreme Court's ruling in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), which set forth the elements that a plaintiff must prove in order to establish a prima facie case at the summary judgment stage.  Indeed, "the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under <u>McDonnell Douglas</u>."  <u>Lax v. 29 Woodmere Blvd. Owners, Inc.</u>, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011).   This is because, at the pleading stage, the Court does not apply the <u>McDonnell Douglas</u> burden shifting test used to analyze the evidentiary support for discrimination claims.  <u>See</u> <u>Gonzalez v. Carestream Health, Inc.</u>, No. 12–4202–cv, 2013 WL 1296492, at *1 (2d Cir. Apr. 2, 2013) ("To survive a motion to dismiss, a complaint alleging

workplace discrimination . . . need not allege specific facts establishing a prima facie case under McDonnell Douglas. . . ."); Rosario v. City of New York, No. 11–CV–09008 (PAC)(SN), 2013 WL 782408, at *6 (S.D.N.Y. Jan. 9, 2013), adopted by 2013 WL 78258, at *2 (S.D.N.Y. Mar. 1, 2013) ("An 'employment discrimination plaintiff need not plead a prima facie case of discrimination [under McDonnell Douglas Corp. v. Green].") (quoting Bermudez v. City of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) (in turn, quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002))).

Rather, "[this Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" Gonzalez v. Carestream Health Inc., 2013 WL at *1 (quoting Twombly, 550 U.S. at 555); see also Boykin v. KeyCorp, 521 F.3d 202, 212–13 (2d Cir.2008). In other words, "the Court asks only whether a plaintiff has *pled* a prima facie case, not whether a plaintiff has *established* that case. Thus, the standard is simply whether [the] [P]laintiff's [C]omplaint, construed liberally, satisfies the federal pleading requirements for a claim" of retaliation. Hitchins v. NYC Dept. of Educ., No. 11–CV–4180 (RRM)(RML), 2013 WL 1290981, at *3 (E.D.N.Y. Mar. 28, 2013) (emphasis added).

Nevertheless, while a plaintiff need not allege specific facts establishing all the elements of a prima facie case under McDonnell Douglas, these elements can still "provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible." Sommersett v. City of New York, No. 09 Civ. 5916(LTS)(KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). In this regard, under McDonell Douglas, "[a] plaintiff alleging disparate treatment discrimination [ ] establish[es] a prima facie case by showing '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of

discrimination.'"  Id. at *5 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d

Cir.2009)).

Here, the Defendants contend that the Plaintiff fails to state a claim for gender

discrimination because she does not allege that she suffered an adverse employment action.  The

Court disagrees.

"'A plaintiff sustains an adverse employment action if he or she endures a materially

adverse change in the terms and conditions of employment.'"  Quinby v. WestLB AG, No. 04

Civ.7406 WHP, 2007 WL 1153995, at *11 (S.D.N.Y. Apr. 19, 2007) (quoting Galabya v. New

York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)); see also Brown v. City of Syracuse,

673 F.3d 141, 150 (2d Cir. 2012) (same).  "Material adversity 'depends upon the circumstances

of the particular case, and should be judged from the perspective of a reasonable person in the

plaintiff's position, considering all the circumstances.'"  Santora v. All About You Home Care

Collaborative Health Care SVC, LLC, No. 3:09CV00339 (DJS), 2012 WL 1964965, at *3 (D.

Conn. May 31, 2012) (quoting Burlington Northern & Sante Fe Ry. Co. v. White, 548 U.S. 53,

71, 126 S. Ct. 2417, 165 L. Ed. 2d. 345(2006)).  "Examples of a materially adverse change

include 'a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and]

significantly diminished material responsibilities.'"  Quinby, 2007 WL at *11 (quoting

Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005) (in turn quoting Terry v. Ashcroft, 336

F.3d 128, 138 (2d Cir. 2003))).  Of importance, "[c]hanges in assignments or duties that do not

'radically' alter the nature of work are not typically adverse employment actions."  Id. (quoting

Galabya, 202 F.3d at 640 (in turn quoting Rodriguez v. Bd. of Educ., 620 F.2d 362, 366 (2d

Cir.1980))).

In this case, the Plaintiff's Complaint asserts that "[p]art of Plaintiff's job is to conduct extraditions and in-state prisoner transfers." (Compl., ¶ 20.) The Plaintiff's Complaint further asserts that by changing their extradition policy, the Defendants, among other things, caused her and other female detectives to be denied assignments transferring and extraditing prisoners and also denied them overtime work and resulted in loss of pay and benefits. In addition, the Plaintiff's Complaint indicates that her male colleagues were permitted to escort female detainees and were not made to comply with the revised extradition policy. The Court finds that these facts are sufficient to allege an adverse employment action.

While the Defendants attempt to suggest that "[e]xtradition work is a very small portion of a . . . [d]etective's job responsibilities" and "[a]ny overtime earned in connection with an extradition is also minimal," (Def. Mem., pg. 10), these are factual assertions that are not contained in the Plaintiff's Complaint which the Court must disregard. Indeed, whether the change in the extradition policy radically changed the nature of the Plaintiff's work or caused significant decreases to her overtime pay are questions of fact that are not appropriate for consideration by this Court on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512 (LTS)(GWG), 2012 WL 2930220, at *2 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss, the Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. Evidence outside these parameters

may be introduced in connection with a motion for summary judgment; it cannot, however, be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

As such, at this stage, the Defendants arguments are insufficient to dismiss the Plaintiff's first and second causes of action. Accordingly, the Court finds that the Plaintiff has stated a valid claim of gender discrimination under § 1983 and Title VII.

## E. As to Whether the Plaintiff Stated Claims under 42 U.S.C. § 1983 and the Fourteenth Amendment on the Grounds that the Defendants Retaliated Against Her for Opposing Discrimination

As with the Plaintiff's claims for gender discrimination, the standards for evaluating Fourteenth Amendment retaliation claims arising under § 1983 is the familiar burden shifting test established in McDonnell Douglas, 411 U.S. at 802–05, discussed above. In addition, the Court notes this standard is identical to the standard used for evaluating retaliation claims under Title VII. See, e.g., Carmody v. Village of Rockville Centre, 661 F. Supp. 2d 299, 324 (E.D.N.Y. 2009) (collecting Second Circuit cases). As such, while the Court has already determined that the Plaintiff is procedurally barred from bringing her Title VII retaliation claim, it will nonetheless rely on Title VII cases to analyze the Plaintiff's § 1983 Fourteenth Amendment retaliation claim.

Relevant here, the McDonnell Douglas test requires that the plaintiff establish a prima facie case of retaliation, which could be shown by mere temporal proximity between the protected conduct and the alleged retaliatory action. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932–33 (2d Cir. 2010) (describing the McDonnell Douglas burden shifting test in the context of a retaliation claim). To establish a prima facie case of retaliation, the plaintiff must:

> adduce evidence sufficient to permit a rational trier of fact to find
> (1) that he engaged in protected . . . opposition, (2) that the

employer was aware of this activity, (3) that the employer took
adverse action against the plaintiff, and (4) that a causal connection
exists between the protected activity and the adverse action, i.e.,
that a retaliatory motive played a part in the adverse employment
action.

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006); see

also Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).

However, as stated above, the Court is mindful that "the survival of a complaint in an

employment discrimination case does not rest on whether it contains specific facts establishing a

prima facie case under McDonnell Douglas." Lax, 812 F. Supp. 2d at 236. Instead, "[a] plaintiff

claiming retaliation need only 'show that a reasonable employee would have found the

challenged action materially adverse, which . . . means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination.'" Kirkweg v. New York City

Dept. of Educ., No. 12 Civ. 2635(WHP), 2013 WL 1651710, at *5 (S.D.N.Y. Apr. 4, 2013)

(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415,

165 L. Ed. 2d 345 (2006)). Accordingly, at the pleading stage, the Court does not apply the

McDonnell Douglas burden shifting test used to analyze the evidentiary support for retaliation

claims, but rather generally assesses the plausibility of the plaintiff's claim based on the facts

alleged. See Boykin, 521 F.3d at 212–13.

In this case, the Plaintiff's March 25, 2008 letter, directed to the Chief of Detectives,

asked for the extradition policy to be reevaluated because the Plaintiff felt it that discriminated

on the basis of gender. As such, the Plaintiff has clearly alleged that she was engaged in

protected opposition and that the Defendants were aware of this activity, since the letter was sent

to the Chief of Detectives. In addition, the Plaintiff engaged in another protected activity that the

Defendants would have been aware of when she filed her EEOC charge complaining of gender

discrimination on July 22, 2008.  See Gaines v. N.Y.C. Transit Authority, 353 F. App'x 509, 511 (2d Cir. 2009) (citing Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991)).

Furthermore, the Plaintiff points to the audit of her computer usage and that she was denied extradition assignments as examples of adverse employment actions that were taken against her.  These events allegedly occurred after the Plaintiff sent her letter to the Chief of Detectives and after she filed her EEOC Complaint.  With respect to the denial of extradition assignments, the Court finds that this action may constitute an adverse employment action, since it allegedly impacted the Plaintiff's income and, thus, "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)).

As to the Plaintiff's assertion that her computer usage was audited, the Court first acknowledges that "numerous courts have found that subjecting an employee to an audit is *not* an adverse employment action[.]"  Dowrich v. Aramak Healthcare Support Services, Inc., No. 03-CV-2392 (DLI)(VVP), 2007 WL 2572122, at *11 (E.D.N.Y. Sept. 4, 2007) (collecting cases).  This is because "an adverse employment action must be something more than an everyday work occurrence."  Id.  In this regard, an audit is "generally not considered [an] actionale form[ ] of retaliation," unless the [audit] results in demotion or termination[.]" Herschman v. City University of New York, No. 08 Civ. 11126(JSR)(FM), 2011 WL 12010209, at *18 (S.D.N.Y. Feb. 28, 2011), adopted by 2011 WL 1210209, at *1 (S.D.N.Y. Mar. 29, 2011) (quoting Byra-Grezegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 252 (D. Conn. 2008).  Nevertheless, at this very early stage, viewing the Plaintiff's assertions in the light most favorable to her, the Court finds that the audit in combination with the reduction in the Plaintiff's

extradition assignments support a plausible inference that the Defendants took retaliatory action against the Plaintiff. See, e.g., Kirkweg, 2013 WL at *5 (finding that "several of [the Plaintiff's] allegations – such as the circumstances surrounding the loss of her performance bonus, the alleged excessive scrutiny she faced, and her poor performance review – plausibly [met] [the] standard [for retaliation on a motion to dismiss] when viewed in the light most favorable to her").

Moreover, in the Court's view, the Plaintiff has made sufficient assertions at this time to demonstrate a causal link between her protected activity and the denial of extradition assignments. Of relevance here, "[a] plaintiff may demonstrate causation '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment[.']" Id. at *5 (quoting Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010). "When a plaintiff relies on temporal proximity to demonstrate causation, the proximity must be 'very close.'" Id. at *5 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001)).

Here, the Plaintiff asserts that she was notified of the audit of her computer usage on December 11, 2008, which was nine months after she sent her letter and five months after she filed her EEOC charge. According to the Second Circuit, "five months is not too long to find the causal relationship." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); see also Dotson v. City of Syracuse, No. 5:11–CV–620 (NAM/ATB), 2013 WL 1293775, at *11 (N.D.N.Y. Mar. 27, 2013) (finding that "at this early point in the litigation, [ ] the amended complaint states a plausible retaliation claim" where the plaintiff alleged "she suffered an adverse employment action . . . four to five months after [the plaintiff's friend] filed her EEOC complaint"). In addition, December 11, 2008 was only the date in which the Plaintiff was

*notified* of the audit. Therefore, a plausible inference could be made that the Defendants audited her computer usage at some time that was in even closer proximity to the dates of the protected activity. Similarly, the Complaint does not specifically state when the Defendants began denying the Plaintiff extradition assignments, but a plausible inference can be made that this, too, happened in close proximity to when the Plaintiff engaged in the protected activity.

Accordingly, the Court finds that "[a]t the pleading stage, it is sufficient that [the Plaintiff] provide[d] several factual allegations that can plausibly be viewed as adverse employment actions taken in retaliation for her . . . complaints" of gender discrimination. Kirkweg, 2013 WL at *6 (citing Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion . . . . A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.")). As such, the Court denies the Defendants' motion to dismiss the Plaintiff's § 1983 Fourteenth Amendment retaliation claim.

**F. As to Whether the Plaintiff Stated a Claim Under 42 U.S.C. § 1983 and the First Amendment on the Grounds that the Defendants Violated her First Amendment Right to Free Speech**

The Plaintiff's sixth cause of action alleges that the Defendants violated the Plaintiff's rights under the First Amendment to the United States Constitution by retaliating against her for exercising her free speech rights to oppose discrimination in her March 25, 2008 letter. "[W]here the plaintiff is a public employee alleging that she suffered an adverse employment action in retaliation for the exercise of her First Amendment rights, she must initially show that: (1) her speech was constitutionally protected, (2) she suffered an adverse employment action,

and (3) there is a causal relationship between her utterance of the speech and the subsequent adverse employment action."  Winters v. Meyer, 442 F. Supp. 2d 82, 86 (S.D.N.Y. 2006) (citing New York State Law Officers Union v. Andreucci, 433 F.3d 320, 327 (2d Cir. 2006); Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005) (in turn, citing Johnson v. Ganim, 342 F.3d 105 (2d Cir. 2003))).   However, such a claim, like the Plaintiff's § 1983 Fourteenth Amendment claim, must satisfy the requirements of Monell.

As discussed above, "[a] § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom." Robinson v. Town of Kent, N.Y., No. 11 Civ. 2875(ER), 2012 WL 3024766, at *6 (S.D.N.Y. July 24, 2012) (citing Monell, 436 U.S. at 691).  "To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006).

In this case, the Court finds that the Plaintiff has alleged a valid Monell claim with respect to its sixth cause of action.  In this regard, the Plaintiff asserts that (1) on March 25, 2008, she wrote a letter to the Chief of Detectives seeking revaluation of the Police Department's extradition policy; (2) on July 22, 2008, she filed an EEOC charge accusing the Defendants of gender discrimination; (3) on December 11, 2008, she was called into Captain Thompson's

office and notified that her computer usage had been audited; and (4) she was denied extradition requests although she was often the investigating detective on the case and/or the detainee was female. As the Court explained above, "[a]t this early stage in the litigation, [the] [P]laintiff need not prove that she would succeed on her claim of Monell liability, but must merely show that she has a plausible claim that would entitle her to relief." Drees, 2007 WL at *19. The Plaintiff's Complaint here presents sufficient factual assertions to give rise to a plausible inference that after the Plaintiff began voicing her opinions regarding the extradition policy, she became a target of retaliation. A further inference can be made that either the Chief of Detectives or Captain Thompson had final decision-making authority or else another municipal official with final decision-making authority was responsible for directing the alleged retaliation. As a result, the Court finds that the Plaintiff has satisfied Monell for her § 1983 First Amendment retaliation claim. See Giscombe, 2013 WL at *7.

Having determined that, under Monell, the Plaintiff can proceed forward with her First Amendment retaliation claim pursuant to § 1983, the Court now evaluates whether the Plaintiff has set forth sufficient allegations to state such a claim. In this regard, the Court must first determine whether the Plaintiff's letter and EEOC charge constituted protected speech. Determining whether a public employee's speech is constitutionally protected "from retaliation under the First Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 518, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006)). As to the first inquiry, "[w]hether an employee's speech addresses a matter of public concern is a question of

law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999) (citing Connick v. Myers, 461 U.S. 138, 147–48, 103 S. Ct. 1684, 1690–91, 75 L. Ed. 2d 708 (1983)). "To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Jackler v. Byrne, 658 F.3d 224, 236 (2d Cir. 2011) (quoting Connick, 461 U.S. at 146). However, "[s]peech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to the speaker's own situation,' such as his or her assignments, promotion, or salary, does not address matters of public concern." Id. (quoting Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S. Ct. 657, 116 L. Ed. 2d 749 (1991)).

Of importance, "[t]he Second Circuit has permitted a First Amendment retaliation claim based on the filing of discrimination complaints." Brown v. City of Syracuse, No. 5:01-CV-1523 (FJS/DEP), 2008 WL 5451020, at *3 (N.D.N.Y. Dec. 31, 2008) (citing Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)). Indeed, "when an employee's complaints to a supervisor 'implicate[ ] system-wide discrimination they . . . unquestionably involve[ ] a matter of public concern.'" Dean v. New York City Transit Authority, 297 F. Supp. 2d 549, 557 (E.D.N.Y. 2004) (quoting Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993)). In this case, the Plaintiff's letter and EEOC charge clearly concerned how the Defendants' extradition policy was causing "system-wide" gender discrimination impacting all female detectives, not just the Plaintiff. In addition, at this stage, it does not appear to the Court that the Defendants had any adequate justification for treating the Plaintiff differently from any other member of the general public. As such, the Court finds that the Plaintiff's Complaint

sufficiently asserts that the Plaintiff engaged in protected speech.  See Konits v. Valley Stream Cent. High School Dist., 394 F.3d 12, 125 (2d Cir. 2005) ("Gender discrimination in employment is without doubt a matter of public concern.  Indeed, we have held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern.") (citing  Flamm v. Am. Ass'n Of Univ. Women, 201 F.3d 144, 150 (2d Cir. 2000) ("Gender discrimination is a problem of constitutional dimension, and the efforts . . . to combat it clearly relate to a matter of public concern.")).

The Court must also determine whether the Plaintiff sufficiently pled that she suffered an adverse employment action.  "[I]n the context of a First Amendment retaliation claim, an adverse action is any 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'  This standard is broader than the standard of what constitutes an adverse action on a gender discrimination claim, but is similar to the standard for the same element of a [Fourteenth Amendment] retaliation claim," discussed above.  Seale v. Madison County, No. 5:11–CV–0278 (GTS/ATB), 2013 WL 869400 (N.D.N.Y. Mar. 7, 2013), at *13 (quoting Zelnik v. Fashion Inst. Of Tech., 464 F.3d 217, 225 (2d Cir. 2006)) (internal alterations omitted).  "Adverse employment actions generally include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand' but may also include lesser actions such as negative evaluations, accusations of misconduct, assignment to certain duties, and failure to process forms." Brown, 2008 WL at *4 (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

For the same reasons that the Court relied upon in determining that the Plaintiff stated a § 1983 Fourteenth Amendment retaliation claim, see supra Section II.E, the Court finds that the Plaintiff's Complaint satisfactorily asserts facts that, if true, would indicate the Plaintiff suffered

adverse employment actions.  See Seale 2013 WL at *20.  Not only was her computer usage audited, but she was allegedly denied extradition assignments, which resulted in a reduction of her income.

Lastly, the Court need not reevaluate whether a causal connection existed between the Plaintiff's protected activity and the subsequent adverse employment actions.  The Court analyzed this prong extensively in it discussion of the Plaintiff's § 1983 Fourteenth Amendment retaliation claim and determined that the Plaintiff's Complaint was satisfactory in this regard. See supra Section II.E.   This is because "[t]he causation element of a prima facie case of retaliation under the First Amendment and [the Fourteenth Amendment] are the same."  Puglisi v. Town of Hempstead, No. 10–CV–1928 (JS)(GRB), 2012 WL 4172010, at *12 (E.D.N.Y. Sept. 17, 2012) (citing Lore v. City of Syracuse, 583 F. Supp. 2d 345, 382 (N.D.N.Y. 2008)). Accordingly, the Court denies the Defendants' motion to dismiss the Plaintiff's sixth cause of action.

## G.  As to Whether the Plaintiff Stated a Claim for Breach of Contract on the Grounds that the Defendants Deprived Her of the Protection Provided by the Terms of the CBA Entered into by the County and the Plaintiff's Union

The Plaintiff's last cause of action asserts that the Defendants deprived her of the protection provided by the terms of the CBA that was entered into by the County and the Plaintiff's union, the Detective's Association Inc. of the Police Department of the County of Nassau ("the Plaintiff's union" or "DAI").  However, the Defendants contend that this claim must be dismissed because the Plaintiff does not have standing to bring it under the terms of the CBA.

Under New York State law, "when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement

may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract." Board of Educ., Commack Union Free School Dist. v. Ambach, 70 N.Y.2d 501, 508, 517 N.E.2d 509, 512 (1987). However, "when the union fails in its duty of fair representation," an employee "can . . . go beyond the agreed procedure and litigate a contract issue directly against the employer." Id.; see also U.S. v. Brennan, 650 F.3d 65, 123 (2d Cir. 2011); Morgenstern v. County of Nassau, No. 04-CV-0058 (JS)(ARL), 2008 WL 4449335, at *18 (E.D.N.Y. Sept. 29, 2008); Sackey v. City of New York, No. 04 Civ.2775 WHP, 2006 WL 337355, at *11 (S.D.N.Y. Feb. 15, 2006).

Here, the Plaintiff has adequately pled her breach of contract claim. In this regard, the CBA provides for the fair and equal treatment in matters of pay and terms of employment including the terms, conditions and privileges of employment without regard to gender, among other things. The Plaintiff alleges that the Defendants violated this provision of the CBA by implementing the new extradition policy on March 1, 2007. Moreover, of importance, the Plaintiff alleges that "the Defendants' retaliatory conduct has caused the Plaintiff's [u]nion to fear adequately representing her interests thus depriving her of the protection of the terms of her contract." (Compl., ¶ 56.) As such, assuming that the Plaintiff's allegation that her union has failed to represent her is true, she was permitted to commence this lawsuit against the Defendants for breach of the CBA.

The Court notes that the Defendants' argument that Section 2.0 of the CBA prohibits this claim from proceeding forward is clearly erroneous. Section 2.0 of the CBA provides as follows:

> The [DAI] has been duly certified as the negotiation representative of the negotiating unit by an order of PERB [the Nassau County Public Employment Relations Board] and amendments thereto. The County recognizes the Association as the exclusive and

> unchallenged negotiation representative for collective negotiation
> with respect to rates of pay, salaries, hours and other terms and
> conditions of employment for all the employees in the negotiating
> unit for the period of the agreement.

(Faraci Decl., Exh. C.)  Thus, this provision concerns the exclusive authority of the Plaintiff's

union to collectively negotiate the terms of the CBA, as well as any amendments to the CBA, on

behalf of all employees within the union.  However, having the authority to negotiate the terms

of the CBA is distinct from having the authority to initiate a procedure or bring an action when

those terms have allegedly been breached.  Accordingly, the Court finds that the CBA does not

bar the Plaintiff from asserting her breach of contract claim.

### III.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's first cause of action,

brought pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth and

alleging gender discrimination and retaliation, is denied; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's second cause of action,

brought pursuant to Title VII and alleging gender discrimination, is denied; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's third cause of action,

brought pursuant to the NYSHRL and alleging gender discrimination, is granted; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's fourth cause of action,

brought pursuant to Title VII and alleging retaliation, is granted; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's fifth cause of action,

brought pursuant to the NYSHRL and alleging retaliation, is granted; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's sixth cause of action,

brought pursuant to § 1983 and the First Amendment, is denied; and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's seventh cause of action, alleging breach of contract, is denied.

**SO ORDERED.**
Dated: Central Islip, New York
May 25, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge